United States District Court
Southern District of Texas
**ENTERED**
February 22, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-20-562-1 |
| | § | |
| | § | CIVIL ACTION NO. H-23-1790 |
| | § | |
| | § | |
| DURLAN GARCIA-PUPO | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

Representing himself, federal prisoner Durlan Garcia-Pupo, (BOP #18093-579), filed a letter motion seeking "authorization to present evidence for a sentence correction." (Docket Entry No. 106). The court construed Garcia-Pupo's letter motion as a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. (Docket Entry No. 107). Because the letter motion did not comply with Rule 2(c) of the Rules Governing Section 2255 Proceedings in the United States District Court, the court ordered Garcia-Pupo to file an amended motion and provided him the proper form. (*Id.*). After Garcia-Pupo filed his amended motion, (Docket Entry No. 113), the court ordered the Government to respond. (Docket Entry No. 114). The Government responded with a motion for summary judgment, (Docket Entry No. 121), and Garcia-Pupo filed a response. (Docket Entry No. 124). Based on the motions and responses, the record, and the applicable law, the court grants the Government's motion for summary judgment and denies Garcia-Pupo's motion. The reasons are set out below.

**I.      Background**

In November 2020, a federal grand jury indicted Garcia-Pupo and two codefendants after a four-year, multi-agency investigation into the use of credit-card skimming devices at point-of-

sale locations in Harris County, Texas. (Docket Entry Nos. 1; 62, p. 4). Garcia-Pupo was named in four counts: conspiracy to commit access-device fraud, in violation of 18 U.S.C. § 1349 (count one); possession of counterfeit and unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (count two); wire fraud, in violation of 18 U.S.C. § 1343 (count five); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (count six). (Docket Entry No. 1).

During the investigation, law-enforcement officers executed a search warrant for a house where they had seen Garcia-Pupo placing items under the back porch. (Docket Entry No. 62, p. 5). The search yielded a laptop containing 267 unauthorized access devices and software used to create fraudulent credit cards, as well as a box of counterfeit credit cards. (*Id.*). Officers later learned that Garcia-Pupo had equipment at his house for encoding stolen credit card numbers onto fraudulent cards. (*Id.* at 6). Officers obtained a search warrant for Garcia-Pupo's house, which yielded a computer containing 1,523 stolen credit card numbers and the personal identifying information of the account holders. (*Id.* at 7). Garcia-Pupo's DNA was also found on nine gas-pump skimmer devices located in several different states. (*Id.* at 4).

In May 2021, while represented by attorney Christian Navarro, Garcia-Pupo entered into a plea agreement with the Government, pleading guilty to the charges of conspiracy to commit access-device fraud and aggravated identity theft in exchange for the Government dismissing the remaining charges. (Docket Entry No. 42). The plea agreement clearly stated that the statutory maximum penalty for the conspiracy charge was ten years in prison followed by three years of supervised release, and that the statutory maximum penalty for the aggravated identity theft charge was two years in prison consecutive to any other sentence, followed by one year of supervised release. (*Id.* at 1-2). As part of the plea agreement, Garcia-Pupo waived his right to appeal his sentence or have it collaterally reviewed, except for claims of ineffective assistance of counsel.

(*Id.* at 3-4).  Garcia-Pupo acknowledged in the written agreement that the court would determine his sentence, that the court was not bound by the Sentencing Guidelines, and that any estimate of a sentence he may have received from Navarro, the Government, or the Probation Office was not binding and did not induce his guilty plea.  (*Id.* at 4, 6-7).

Garcia-Pupo and Navarro also both signed an addendum to the plea agreement.  (*Id.* at 14). In the addendum, Navarro affirmed that he had "carefully reviewed every part of th[e] plea agreement with" Garcia-Pupo and that Garcia-Pupo's decision to enter the plea agreement was knowing and voluntary.  (*Id.* at 14).  Garcia-Pupo affirmed that he "fully underst[ood] all [his] rights with respect to the indictment," that he had "read and carefully reviewed every part of th[e] plea agreement with [his] attorney," and that he understood and voluntarily agreed to its terms. (*Id.*)

At his rearraignment hearing,[1] Garcia-Pupo assured the court that he had had enough time to discuss his charges with Navarro, that he was ready to plead guilty, and that he was "fully satisfied" with Navarro's representation.  (Docket Entry No. 96, p. 7).  He affirmed that no one had threatened or forced him to enter his guilty plea and that he was doing so freely and voluntarily. (*Id.* at 7-8).  Garcia-Pupo told the court that he had reviewed the entire plea agreement with Navarro, that Navarro had answered all his questions, and that he agreed with all the terms of the plea agreement.  (*Id.* at 8-9).  The court read aloud the factual basis for the plea agreement, and Garcia-Pupo affirmed that the facts set out in the plea agreement were true and correct.  (*Id.*).

---

[1]The rearraignment hearing was held before Magistrate Judge Sheldon, with Garcia-Pupo's consent.  (Docket Entry No. 96, pp. 3-5).

Garcia-Pupo also assured the court that, although Navarro was signing his plea agreement for him, he was affirming the plea agreement as if he had signed it himself.[2]  (*Id.* at 9).

During the colloquy, and before Garcia-Pupo entered his plea, the court explained the elements of the offenses to which Garcia-Pupo was pleading guilty, along with the statutory maximum sentences for those offenses.  (*Id.* at 9-10, 13-15).  The court also explained the terms of the appellate and collateral review waivers in Garcia-Pupo's plea agreement.  (*Id.* at 16-19).  Garcia-Pupo repeatedly assured the court that he understood the court's explanations.  (*Id.* at 11, 14-19).  Navarro stated that he believed Garcia-Pupo was competent and understood the charges and the consequences of pleading guilty.  (*Id.* at 16).  Garcia-Pupo testified that no one had made any promises to him, other than those in the plea agreement, to get him to plead guilty.  (*Id.* at 22).  After assuring the court that he understood his right to trial and his legal rights relating to the plea agreement, Garcia-Pupo waived his right to trial and pleaded guilty to the two charges included in the plea agreement.  (*Id.* at 24-25).  The court found that Garcia-Pupo's plea was knowing and voluntary and that he was competent, and it then accepted his plea.  (*Id.* at 32).

Judge Sheldon issued a Report and Recommendation recommending that the district court accept Garcia-Pupo's guilty plea.  (Docket Entry No. 44).  The court adopted the Report and Recommendation, finding that Garcia-Pupo was fully competent, that he was aware of the nature of the charges and the consequences of his guilty plea, and that his plea was knowing and voluntary.  (Docket Entry No. 51).

After accepting Garcia-Pupo's plea, the court ordered the U.S. Probation Office to prepare a Presentence Investigation Report (PSR).  (Docket Entry No. 43).  Garcia-Pupo's PSR included

---

[2]Garcia-Pupo's rearraignment hearing was held during the COVID-19 pandemic, at a time when court proceedings were occurring on a video link and there was limited in-person contact between counsel and their clients.  (Docket Entry No. 96, pp. 1, 3).

adjustments to his offense level for the amount of the loss, the number of victims, his possession of device-making equipment, and his leadership role in the skimming organization.  (Docket Entry No. 62, pp. 8-9).   The PSR also included a three-level reduction in his offense level for his acceptance of responsibility.  (*Id.* at 9).  These adjustments resulted in a total offense level of 27. (*Id.*).  Garcia-Pupo's criminal history score was zero, resulting in an advisory Guideline sentence range of 70 to 87 months in prison on the conspiracy count, to be followed by the mandatory 24-month consecutive sentence on the aggravated identity theft count.  (*Id.* at 10, 14).  Garcia-Pupo did not object to the PSR.  (Docket Entry No. 98).

Before Garcia-Pupo's sentencing hearing was held, defense counsel Navarro passed away. (Docket Entry No. 118, pp. 7-8).  The court promptly appointed Joe A. Salinas to represent Garcia-Pupo.  (Docket Entry No. 71).  Garcia-Pupo's sentencing hearing was held four months later.  At that hearing, Salinas told the court that he had reviewed the PSR with Garcia-Pupo.  (Docket Entry No. 118, pp. 2-3).  While there were no legal objections to the PSR, Salinas pointed out that the fourteen-level increase in the offense level for the loss amount of $811,500 seemed high given that the "ascertainable loss was only $15,000."  (*Id.* at 7).  Salinas also told the court that before the sentencing hearing, he had met with Garcia-Pupo and reviewed the plea agreement, the Government's evidence, and the transcript of the rearraignment hearing.  (*Id.* at 7-8).  Salinas requested a downward variance in the sentence based on the sentences imposed on Garcia-Pupo's codefendants and the fact that he had been in custody for an extended time.  (*Id.* at 8-9).  Salinas requested a total sentence of 74 months of incarceration, including the mandatory consecutive 24-month sentence for aggravated identity theft.  (*Id.* at 9-10).  The Government requested a sentence at the higher end of the guidelines range based on Garcia-Pupo's leadership role in the skimming organization.  (*Id.* at 11).

The court recognized that Garcia-Pupo's situation differed from that of his codefendants because of his leadership role in the skimming organization. (*Id.* at 12). The court specifically noted the "eye-popping" number of stolen and fraudulent credit cards found in his possession. (*Id.*). After considering all the circumstances under both the Guidelines and 18 U.S.C. § 3553(a), the court sentenced Garcia-Pupo to a below-Guideline sentence of 60 months in prison on the conspiracy conviction, followed by the mandatory 24-month consecutive sentence on the aggravated identity theft conviction, for a total sentence of 84 months in prison. (*Id.* at 13). The court also imposed a three-year term of supervised release. (*Id.*). The court stated that it did not "believe that any grounds for appeal survive the plea agreement," but the court advised Garcia-Pupo of his appeal rights. (*Id.* at 15). Garcia-Pupo stated that he understood his rights to appeal and to have an attorney appointed to represent him on any appeal. (*Id.*).

Garcia-Pupo did not appeal his conviction or sentence. (Docket Entry No. 113, p. 2). Instead, he filed a timely motion to set aside his sentence under § 2255. (*Id.*). The Government responded to the motion with a motion for summary judgment, contending that Garcia-Pupo waived his right to seek collateral review of his sentence in his plea agreement. (Docket Entry No. 121). Alternatively, the Government argues that Garcia-Pupo's ineffective assistance of counsel claims, to the extent not barred by the plea agreement waiver, are without merit. (*Id.*). Garcia-Pupo filed a response to the Government's motion. (Docket Entry No. 124). Each argument is analyzed below.

## II.     The Applicable Legal Standards

### A.     Motions under 28 U.S.C. § 2255

Postconviction relief under 28 U.S.C. § 2255 is limited to errors of constitutional dimension that could not have been raised on direct appeal and that, if left unaddressed, would

result in a complete miscarriage of justice. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *see also United States v. Rodriguez-Castro,* 814 F. App'x 835, 837-38 (5th Cir. 2020) (per curiam). Because of these limitations, a federal defendant may move to vacate, set aside, or correct his sentence under § 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

### B. Summary Judgment

The Government moves for summary judgment under Federal Rule of Civil Procedure 56. "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). When considering a motion for summary judgment, the "court must view the evidence 'in the light most favorable to the [nonmoving] party.'" *Id.* at 657 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010) (citation omitted)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).  But if record evidence clearly contradicts the opposing party's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  In addition, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "Speculative theories cannot defeat a motion for summary judgment," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Guillot on Behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (cleaned up).  After viewing the evidence in the light most favorable to the nonmoving party, summary judgment may be granted if the nonmoving party has failed to show that disputed issues of fact exist as to every element essential to his case on which he bears the burden of proof.  *See Celotex,* 477 U.S. at 322-23.

### C.     Evidentiary Hearing

A defendant seeking relief under § 2255 is entitled to an evidentiary hearing on his claims "unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019) (quoting *United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018)).  Neither conclusory allegations nor "speculative and unsupported accusations of government wrongdoing [will] entitle a defendant to an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013).  If the

defendant fails to meet his burden of proof at the pleadings stage, an evidentiary hearing is unnecessary.  *See Cervantes*, 132 F.3d at 1110; *see also Sanders v. United States*, 373 U.S. 1, 21 (1963) (§ 2255 does not require the court to hold an evidentiary hearing "no matter how vague, conclusory, or palpably incredible his allegations may be"); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief." (quoting *Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994))).

### D.     Pleadings from Self-Represented Litigants

Because Garcia-Pupo is representing himself, his pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam).  But even unrepresented litigants must provide sufficient facts to support their claims. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam).  While a self-represented litigant is entitled to have his pleadings liberally construed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value." *Ross*, 694 F.2d at 1011.

### III.     Analysis

In his § 2255 motion, Garcia-Pupo alleges one claim of an alleged Fourth Amendment violation and three claims based on ineffective assistance of counsel, including one claim with four subclaims.  The court considers each of these claims in turn.

### A.      The Claim of a Fourth Amendment Violation (Ground 3)

Garcia-Pupo claims that he is entitled to have his sentence set aside because federal investigators violated his Fourth Amendment rights by entering and searching his house without a proper warrant.  (Docket Entry No. 113, pp. 7, 16).  He also alleges that the Government's use of the evidence recovered during that search to pursue the charges against him and while negotiating the plea agreement violated his constitutional rights.  (*Id.*).  Because these claims were waived by both the collateral review waiver in Garcia-Pupo's plea agreement and the entry of his guilty plea, he is not entitled to the relief he seeks.

A criminal defendant may waive his right to direct appeal or to pursue collateral relief as part of a plea agreement as long as the waiver is entered knowingly and voluntarily.  *See, e.g., United States v. Keele,* 755 F.3d 752, 754 (5th Cir. 2014) (citing *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005)); *see also United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997).  A plea agreement waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and if the agreement contains an "explicit, unambiguous waiver of appeal."  *Keele,* 755 F.3d at 754 (quoting *McKinney,* 406 F.3d at 746).

In addition, "[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant."  *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)); *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991).  This includes claims based on alleged Fourth Amendment violations.  *See United States v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002) (citing *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999)).  When a defendant enters a voluntary guilty plea, his "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Because of this presumption, "[w]hen a criminal defendant has solemnly

10

admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Smallwood*, 920 F.2d at 1240 (citation omitted).

Garcia-Pupo's written plea agreement included a waiver of his right to challenge his sentence on collateral review, except as to claims of ineffective assistance of counsel. In addition to signing the plea agreement, Garcia-Pupo signed an addendum to that agreement specifically affirming that he had read and "carefully reviewed" every part of the plea agreement, that he fully understood the plea agreement, and that he voluntarily agreed to its terms. At his rearraignment hearing, Garcia-Pupo affirmed that he understood the plea agreement and its waiver provisions and that he was voluntarily entering his guilty plea. The court found that Garcia-Pupo entered both the plea agreement and his guilty plea knowingly and voluntarily.

The collateral-review waiver in Garcia-Pupo's plea agreement bars his claim based on alleged violations of the Fourth Amendment. *See Keele,* 755 F.3d at 754. In addition, Garcia-Pupo's knowing and voluntary guilty plea waives his right to raise Fourth Amendment claims that arose before entry of that plea. *See Palacios*, 928 F.3d at 455. His sworn admission in open court that he was guilty of the offenses with which he was charged also bars his claims for Fourth Amendment violations that occurred before the plea hearing. *See Smallwood*, 920 F.2d at 1240. Having waived his right to attack his sentence both in his plea agreement and by entering his voluntary guilty plea, Garcia-Pupo is not entitled to relief on his alleged Fourth Amendment claim.

In addition, even if these waivers did not bar this claim, Garcia-Pupo does not allege sufficient facts to show that he is entitled to relief. Garcia-Pupo alleges that "the due process for a search warrant was violated." (Docket Entry No. 113, p. 16). He also contends that the evidence seized during the search should have been suppressed as a product of the illegal search. (*Id.*). But

Garcia-Pupo alleges no facts to support his contention that the search warrant was invalid, and his conclusory and unsupported assertion of invalidity is insufficient to entitle him to relief on this claim.  *See Reed*, 719 F.3d at 373-74 (unsupported accusations of government wrongdoing in a § 2255 motion do not entitle a defendant to an evidentiary hearing).

Garcia-Pupo's Fourth Amendment claim is barred by both his collateral-review waiver and his guilty plea.  Alternatively, his motion does not allege facts showing disputed factual issues material to determining his Fourth Amendment claim.  The Government's motion for summary judgment is granted as to Garcia-Pupo's Fourth Amendment claim, and Garcia-Pupo's motion for relief on this basis is denied.

**B.      The Claims of Ineffective Assistance of Counsel (Grounds One, Two and Four)**

Garcia-Pupo raises three claims of ineffective assistance of counsel, one with multiple subclaims, relating to his guilty plea and his sentence.  Ineffective assistance of counsel claims can survive a collateral review waiver when the defendant can show that "the claimed assistance directly affected the validity of that waiver or the plea itself."  *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).  In addition, even a valid waiver "does not preclude review of a sentence that exceeds the statutory maximum."  *United States v. Hollins,* 97 F. App'x 477, 479 (5th Cir. 2004) (per curiam).  In this context, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute.  *United States v. Bond,* 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez,* 413 F.3d 502, 503 (5th Cir. 2005).

An ineffective assistance of counsel claim raised after entry of a guilty plea is subject to the same standard as any other ineffective assistance claim.  To prevail, the defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms and is viewed under the totality of the circumstances. *Id.* at 688. The second prong of the *Strickland* test requires the defendant to show that "it is reasonably likely the result would have been different," if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (cleaned up).

Under both prongs, judicial scrutiny is highly deferential, and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The court presumes that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Because a defendant must satisfy both prongs of the *Strickland* test, even if counsel's performance was professionally unreasonable, the judgment or sentence will not be set aside unless it was affected by the deficiency. *Id.* at 691. The defendant must establish prejudice by showing that the result of his criminal case would have been different without counsel's deficient performance "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). In the context of a guilty plea, the defendant can establish prejudice by showing that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Valdez*, 973 F.3d 396, 402-03 (5th Cir. 2020). To show

prejudice in relation to sentencing issues, the defendant must show that, but for counsel's errors concerning the sentence, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)).

As with any other claim raised in a § 2255 motion, the defendant may not rely on conclusory allegations to obtain a hearing. Instead, a hearing is necessary only when the defendant has alleged "facts which, if proved, would admit of relief." *Fields*, 565 F.3d at 298 (quoting *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994)). Neither conclusory allegations nor "speculative and unsupported accusations" are sufficient to entitle a defendant to an evidentiary hearing. *Reed*, 719 F.3d at 373-74. When the defendant offers nothing but conclusory allegations, an evidentiary hearing is unnecessary and relief is not warranted. *See Cervantes*, 132 F.3d at 1110.

### 1. The Claim of Failing to Explain Sentence Exposure (Ground 1A)

In his first subclaim, Garcia-Pupo alleges that his first defense attorney, Mr. Navarro, provided ineffective assistance by failing to "explain[] where I fall on the sentencing table[] when my charges were given." (Docket Entry No. 113, p. 13). The Government interprets these allegations as claiming that Navarro provided ineffective assistance by failing to explain Garcia-Pupo's sentence exposure before he entered into his plea agreement. (Docket Entry No. 121, pp. 23-25). This claim of ineffectiveness is conclusively refuted by the transcript of the rearraignment hearing, at which the following colloquy took place:

> THE COURT: Mr. Garcia, have you had enough time to fully discuss your case with your attorney and the charges that you're pleading guilty to so that you're ready and comfortable pleading guilty to this afternoon?
>
> DEFENDANT GARCIA-PUPO: Yes.
>
> . . .

14

THE COURT:  *So, Mr. Garcia, did your attorney review with you the plea agreement in Spanish?*

DEFENDANT GARCIA-PUPO:  *Yes.*

. . .

THE COURT:  And did your attorney, Mr. Garcia, answer all the questions you had about your plea agreement?

DEFENDANT GARCIA-PUPO:  Yes.

. . .

THE COURT:  And, Mr. Garcia, do you agree with all the terms contained in your plea agreement?

DEFENDANT GARCIA-PUPO:  Yes.

 . . .

THE COURT:  Okay.  Okay.  Thank you.  Let me go over the penalties that you each[3] face.  These are the maximum penalties.  In a few moments I'll explain how the district judge will go about sentencing you.

*Because you're pleading guilty to two counts, Mr. Garcia, for Count 1, the conspiracy, you face a maximum prison sentence from zero years up to ten years; a fine of up to $250,000; a term of supervised release of three years; and a 100-dollar -- 100-dollar count -- 100-dollar assessment per count of conviction.  For Count 6 you face a mandatory minimum sentence of 24 years (sic) in prison, and the judge has to give you that term of imprisonment of 24 months.  A one year term of supervised release and a 100-dollar per count of conviction.*

So, Mr. Carter, that's just -- for Count 6, it's just a two year sentence, mandatory minimum two years, that's it?

MR. CARTER:  Yes, sir, and consecutive to anything received on the other count.

THE COURT:  Okay.  Correct.  So -- right.  So, if the judge gives you -- for example, in Count 1, if the judge gave you one year, Count 2 -- sorry, for Count 1, she gave you one year; for Count 6, she has to give you two years, so that would be consecutive, meaning that you have to do three years in prison.  But I'll explain it

---

[3]Garcia-Pupo was rearraigned at the same hearing with one of his codefendants.  (Docket Entry No. 96, p. 1).  Judge Sheldon addressed his questions to each defendant in turn.

more when I get to how you're going to actually be sentenced.  *But those are the maximum sentences you face.  Do you understand that, Mr. Garcia?*

DEFENDANT GARCIA-PUPO:  *Yes.*

THE COURT:  *Okay.  Now, I just want to make sure that you understand Count 1 is from zero years up to ten years, whatever sentence you get for Count 1.  And for Count 6, the judge has to give you 24 months for Count 6.  And Count 6 will run consecutive to Count 1.  Do you understand that, Mr. Garcia?*

DEFENDANT GARCIA-PUPO:  *Yes.*

. . .

THE COURT:  Mr. Garcia, what Judge Rosenthal has to do with you in Count 6, she must give you at least two years in prison under Count 6.  You'll receive at least two years in prison.  Then what she also has to do, *whatever sentence she gives you in Count 1, you face from zero years to ten years, whatever sentence she gives you in Count 1, she has to add to Count 2*.  That's why before when I gave you the example of let's say she gave you one year for Count 1 and two years for Count 6, she has to add those together.  Meaning that that will be three years in prison.  Or another example, for Count 1 is she gave you five years for Count 1 and then for Count 6 the two years.  You would have to do seven years.  Or she may give you probation for Count 1.  I don't know.  But *like I said, it has to be anywhere from zero years to ten years for Count 1, but whatever sentence she gives you, she has to give you a minimum of two years for Count 6 and then add those two together.  Now, that's how your sentencing will work.  Mr. Garcia, do you understand what I just explained to you?*

DEFENDANT GARCIA-PUPO:  *Yes.*

THE COURT:  And do you have any questions about how your sentencing will work, Mr. Garcia?

DEFENDANT GARCIA-PUPO:  No.

. . .

THE COURT:  And, Mr. Garcia, have you understood everything that I've explained to you so far during this hearing?

DEFENDANT GARCIA-PUPO:  Yes.

THE COURT:  And do you have any questions, Mr. Garcia?

DEFENDANT GARCIA-PUPO:  No.

THE COURT:  And how do you plead to Count 1, guilty or not guilty?

DEFENDANT GARCIA-PUPO:  Guilty.

THE COURT:  And how do you plead to Count 6, guilty or not guilty?

DEFENDANT GARCIA-PUPO:  Guilty.

(Docket Entry No. 96, pp. 7-15, 21-22, 24-25) (emphasis added).

Garcia-Pupo's sworn statements at this hearing show that he and his counsel had reviewed the plea agreement, including the provision concerning the statutory maximum sentences Garcia-Pupo faced.  Even if there was some view of the evidence that could support the claim that Navarro had failed to properly inform Garcia-Pupo of his potential sentences before the hearing, the record is clear that the court fully explained Garcia-Pupo's potential maximum sentences to him before he entered his guilty plea.  Garcia-Pupo does not allege, much less offer evidence to show, that he would not have pleaded guilty and would have insisted on going to trial had Navarro properly advised him concerning his potential sentences before he entered his plea.  *See Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").  And Garcia-Pupo may not avoid a motion for summary judgment by contradicting in his § 2255 motion the statements he previously gave under oath at the rearraignment hearing.  *See United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (citing *United States v. Sanderson*, 595 F.2d 1021, 1022 (5th Cir. 1979) (per curiam); *see also United States v. Arreola-Ramos*, 204 F.3d 1115, 1999 WL 1328071, at *1 (5th Cir. 1999) (per curiam) ("A petitioner may not contradict the facts to which he has sworn when pleading guilty.").

Garcia-Pupo's claim that he was either not advised or misadvised about the potential sentences he faced is conclusively refuted by the record.  He has failed to allege or point to facts

showing that he was prejudiced by any alleged deficient performance by Navarro. Garcia-Pupo's conclusory allegation of ineffectiveness is insufficient to entitle him to either an evidentiary hearing or relief. The Government's motion for summary judgment is granted as to this claim, and Garcia-Pupo's motion is denied.

### 2. The Claim of Failing to Advise of a Reduction for Acceptance of Responsibility (Ground 1B)

In his second subclaim, Garcia-Pupo alleges that his second defense attorney, Joseph Salinas, provided ineffective assistance by failing to advise whether he had received a three-level reduction in his offense level for acceptance of responsibility and "other assistance." (Docket Entry No. 113, p. 13). The Government responds that Garcia-Pupo cannot show prejudice because the record clearly shows that he received the requested reduction. (Docket Entry No. 121, pp. 32-33). This claim of ineffective assistance is conclusively refuted by the record.

Garcia-Pupo's PSR shows that a three-level reduction for acceptance of responsibility was included in his offense level computation. (Docket Entry No. 62, p. 9). At Garcia-Pupo's sentencing hearing, Salinas confirmed to the court that he and Garcia-Pupo had reviewed the PSR together and that they had no objections. (Docket Entry No. 118, pp. 2-3, 8). Garcia-Pupo does not allege any facts showing that Salinas failed to review the PSR with him or showing that he was prejudiced by Salinas's alleged failure to tell him about an offense-level reduction that he actually received. And he may not contradict his sworn testimony from the sentencing hearing that he had reviewed the PSR and had no objections in an effort to obtain relief under § 2255.

Garcia-Pupo does not show any factual disputes material to determining that he was not prejudiced by Salinas's alleged failure to tell him about the offense-level reduction he received. The Government's motion for summary judgment is granted as to this claim, and Garcia-Pupo's claim for relief on this basis is denied.

### 3.      The Claim of Failing to Secure an Agreed Sentence (Ground 1C)

In his next subclaim, Garcia-Pupo alleges that Navarro provided ineffective assistance by failing "to reach a sentencing deal with the Federal Government" for a specific sentence.  (Docket Entry No. 113, pp. 4, 13).  The Government has interpreted this allegation as claiming that Navarro was ineffective for failing to obtain a plea agreement for an agreed sentence under Federal Rule of Criminal Procedure 11(c)(1)(C).  (Docket Entry No. 121, pp. 27-30).  Garcia-Pupo's allegations do not establish either deficient performance or prejudice.

Criminal defendants do not have a constitutional right to be offered a plea agreement.  *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  Whether to make a plea offer, and what the terms should be, is purely a matter of prosecutorial discretion.  *Id.*; *see also United States v. Midkiff*, No. 1:05-cr-10022-01, 2011 WL 3328525, at *4 (W.D. La. June 15, 2011) (per curiam) ("A prosecutor exercises considerable discretion in matters such as whether to enter into plea bargains (or not) and the terms on which they will be established.").  Because there is no constitutional right to be offered a plea agreement, defense counsel cannot be ineffective for failing to secure such an agreement.  *See, e.g., United States v. Valdez*, Nos. 4:13-CV-080 and 4:11-CR-065, 2013 WL 1496935, at *3 (N.D. Tex. Apr. 10, 2013) (per curiam) ("It is well-established that there is no constitutional right to a plea bargain.  For [a defendant] to succeed on [a claim that counsel was ineffective for failing to secure a favorable plea agreement], he must show a reasonable probability that, but for deficient representation, the government would have offered a plea agreement that the court would have accepted.").

In addition, to show prejudice in the context of a claim for failing to negotiate a favorable plea agreement, the defendant must show that the prosecutor was willing to offer a plea agreement with the terms he complains are missing.  *See Connolly v. United States*, No. 3:18-cv-51, 2021

WL 665541, at *7 (N.D. Tex. Jan. 25, 2021) (the defendant failed to demonstrate prejudice when he failed to show that the prosecutor would have offered a plea bargain with the terms he desired if his attorney had pursued one).  The defendant must also show that the trial court would have accepted the plea agreement had it been proffered.  *See Missouri v. Frye,* 566 U.S. 134, 147 (2012) (to demonstrate prejudice, the defendant must demonstrate a reasonable probability the plea would have been entered without the trial court refusing to accept it); *King v. Davis*, 898 F.3d 600, 606 n.4 (5th Cir. 2018) (if the defendant cannot show that a plea offer with his desired terms was actually offered, he also cannot show that the trial court would have accepted it).

Garcia-Pupo's allegations do not satisfy these requirements.  He offers no evidence that the Government was willing to offer a plea agreement for a specific term lower than the sentence he received or that the court would have accepted the agreement had one been made.  He also does not allege, much less offer evidence to show, that he would not have pleaded guilty and would have insisted on going to trial had he known that Navarro had not secured an agreed sentence. Having failed to allege facts showing either deficient performance or prejudice, Garcia-Pupo is not entitled to the relief he seeks in this claim.  The Government's motion for summary judgment is granted as to this claim, and Garcia-Pupo's claim for relief is denied.

**4.     The Claim of Falsely Assuring a Four-Year Sentence (Ground 1D)**

In his next subclaim, Garcia-Pupo alleges that Navarro provided ineffective assistance by "incorrectly lead[ing] me to believe there was a possibility of reaching a plea for two years for the fraud conspiracy and two years due to the knowledge," for a total sentence of four years.  (Docket Entry No. 113, p. 13).  He alleges that, as a result, he "accepted to sign the plea deal misinformed." (*Id.* at 4).  The Government interprets this as a claim that Navarro provided ineffective assistance by promising Garcia-Pupo a four-year sentence, which resulted in him entering an involuntary

plea. (Docket Entry No. 121, pp. 25-26).  Again, the claim is conclusively refuted by the transcript

of the rearraignment hearing, which reflects the following colloquy:

> THE COURT:   *It's also very important for you to understand that your plea*
> *agreement is an agreement between you, your attorney, and the United States*
> *government.  The district judge is not a party to your agreement.*  She will do her
> best when she sentences you to follow all the terms of your agreement, but if for
> some reason she doesn't follow the terms of your agreement, you still have to accept
> the sentence the district judge gives you.  You can't appeal that sentence and you
> can't come back to me, the magistrate judge, and ask to withdraw your plea of
> guilty and ask for a trial.  Do you understand that, Mr. Garcia?
>
> DEFENDANT GARCIA-PUPO:  Yes.
>
> . . .
>
> THE COURT:  Now I'm going to explain to you exactly how Judge Rosenthal's
> going to sentence you in this case.  Probably the two most important questions that
> you each asked your attorney before this hearing this afternoon is what's going to
> be my sentence, how much time do you think I'm going to have to serve in prison.
> And your attorneys have not been able to tell you for sure what your sentence will
> be, and let me explain why.  At the end of this hearing I'm going to order the
> probation department to prepare what's called a presentence investigation report.
> This report will contain all the details of your life, your immigration history, your
> criminal history, and the details about the current case.  At the end of your
> presentence investigation report there's going to be a score.  That score will be in
> the form of a range of months.  I'm holding up the sentencing table right now.  This
> is the same sentencing table that your attorney previously showed you.  And that
> range of months that's at the end of your presentence investigation report, it's the
> same range of months that's on this sentencing table.  And what that range of
> months is at the end of your presentence investigation report is the prison sentence
> the probation officer is recommending to the district judge you receive.  *That's why*
> *before today your attorney can't tell you for sure what your sentence will be,*
> *because this report has not yet been prepared.*  Once this report is prepared, your
> attorney is going to come meet with you and review that report with you.  Once you
> and your attorney have reviewed that report together, your attorney can file any
> objections with the district judge about the report and your attorney can file any
> paper with the district court with recommending what he thinks your sentence
> should be.  And the government also has the same ability.  And then you will show
> up for your day of sentencing before Judge Rosenthal.  Before she sentences you,
> she will have read your presence investigation report, she will have read any
> objections you have filed or any papers you file regarding what you think your
> sentence should be, but she will also review anything the government has filed.
> Then your sentencing hearing will begin before Judge Rosenthal.  During your
> hearing she can consider what we call 3553 factors.  She could use those factors to

increase your score, which could be more time in prison, or she could use those factors to decrease your score, which could mean less time in prison. . . .   Mr. Garcia, what Judge Rosenthal has to do with you in Count 6, she must give you at least two years in prison under Count 6.  You'll receive at least two years in prison. Then what she also has to do, whatever sentence she gives you in Count 1, you face from zero years to ten years, whatever sentence she gives you in Count 1, she has to add to Count 2.  That's why before when I gave you the example of let's say she gave you one year for Count 1 and two years for Count 6, she has to add those together.  Meaning that that will be three years in prison.  Or another example, for Count 1 is she gave you five years for Count 1 and then for Count 6 the two years. You would have to do seven years.  Or she may give you probation for Count 1.  I don't know.  But like I said, it has to be anywhere from zero years to ten years for Count 1, but whatever sentence she gives you, she has to give you a minimum of two years for Count 6 and then add those two together.  Now, that's how your sentencing will work.  Mr. Garcia, do you understand what I just explained to you?

DEFENDANT GARCIA-PUPO:  Yes.

THE COURT:  And do you have any questions about how your sentencing will work, Mr. Garcia?

DEFENDANT GARCIA-PUPO:  No.

. . .

THE COURT:  *Now, as to both of you gentlemen, all of the offers and promises that have been made to you should be in writing and should be contained in your plea agreement.  So my question to you is, has anyone made you any offers or promises to get you to plead guilty this afternoon that are not contained within your written plea agreement?  Mr. Garcia?*

DEFENDANT GARCIA-PUPO:  *Sorry?*

THE COURT:  *Okay.  So my question is, has anyone made you any offers or promises to get you to plead guilty that are not contained within your plea agreement?*

DEFENDANT GARCIA-PUPO:  *No.*

(Docket Entry No. 96, pp. 13-15, 18-22) (emphasis added).  The court later found that Garcia-Pupo's plea was entered knowingly and voluntarily.  (*Id.* at 32).

The transcript of the rearraignment hearing makes clear that Garcia-Pupo knew before he entered his plea that there was no agreement for a four-year sentence.  He also specifically denied

having been made any promises about his sentence to induce him to plead guilty, and he elected to plead guilty after hearing the court state that there was no agreement for a four-year sentence. Garcia-Pupo may not obtain relief under § 2255 by contradicting the facts that he swore to when he entered his guilty plea by claiming now that he would not have pleaded guilty had he known he would not receive a four-year sentence.  S*ee Arreola-Ramos*, 1999 WL 1328071, at *1 (citing *Sanderson*, 595 F.2d at 1022).

Garcia-Pupo's allegation that he entered his plea based on a promised four-year sentence is conclusively refuted by the record and was waived by the knowing and voluntary entry of his guilty plea.  The Government's motion for summary judgment is granted as to this claim, and Garcia-Pupo's claim for relief on this basis is denied.

### 5.    The Claim that Navarro Abandoned His Client (Ground 2)

In his second ground for relief, Garcia-Pupo alleges that his first defense counsel, Navarro, abandoned him by committing suicide and that his second defense counsel, Salinas, was unprepared at the sentencing hearing.  (Docket Entry No. 113, p. 5).  The Government contends that this claim is meritless.  (Docket Entry No. 121, pp. 30-31).

An attorney "abandons" a client when the attorney terminates his representation of the client without notice and without taking any formal steps to withdraw as the attorney of record. *See, e.g., Maples v. Thomas*, 565 U.S. 266, 281 (2012) (citing *Porter v. State*, 2 S.W.3d 73, 74-76 (Ark. 1999)).  In that situation, the attorney's acts or omissions are no longer attributable to the client.  *Id.* at 281-82.  A client is not entitled to affirmative relief due to abandonment without showing both an abandonment and prejudice.  *Id.* at 289-90.

Publicly available records show that Navarro passed away on March 31, 2022.  *See* https://law.texas.edu/alumni/class-notes/class-year/1998 (visited Feb. 13, 2024).  The trial court

23

appointed Salinas to take over Garcia-Pupo's representation two business days later, on April 5,

2022.  (Docket Entry No. 71).  The court reset Garcia-Pupo's sentencing hearing twice to allow

time for Salinas to review the case, obtain transcripts of earlier proceedings, meet with Garcia-

Pupo, and prepare for the sentencing hearing.  (Docket Entry Nos. 72, 95).  At the sentencing

hearing, Salinas addressed the transition, stating:

> MR. SALINAS:  I came in on this case as a result of Mr. Christian Navarro's death.
> In reviewing the PSR, Mr. Garcia-Pupo had some questions about it so I obtained
> the plea agreement.  We sat down and went through the plea agreement.  This was
> a plea that was done by video, by telephone.  Mr. Navarro actually signed the plea
> agreement.
>
> There were some questions by Mr. Garcia-Pupo as to why that happened.  I
> asked Mr. Carter to provide all the evidence in the case.  We wound up going
> through all the evidence in the case and I requested the transcript, which the Court
> granted and then Mr. Garcia-Pupo and I actually went through the transcript line by
> line and item by item refreshing his memory on how everything had happened.
>
> THE COURT:  Good.
>
> MR. SALINAS:  So it was the transcript of the rearraignment hearing.

(Docket Entry No. 118, pp. 7-8).  During the sentencing hearing, Salinas provided the court with

details about Garcia-Pupo's background, explained his position on some of the adjustments in the

PSR, and requested that the court impose a below-Guidelines sentence of 74 months in prison,

including the mandatory consecutive sentence.  (*Id.* at 7-10).  Ultimately, the court sentenced

Garcia-Pupo to a below-Guidelines sentence of 60 months on the conspiracy conviction, followed

by the mandatory 24-month consecutive sentence on the aggravated identity theft conviction, for

a total of 84 months in prison.  (*Id.* at 13).

The record undermines Garcia-Pupo's allegation that he was abandoned by counsel during

the proceedings.  The court appointed Salinas to represent Garcia-Pupo two business days after

Navarro's death.  The record shows that Salinas worked diligently to meet with Garcia-Pupo, to

become familiar with the facts of the case, and to prepare for the sentencing hearing after his appointment.  The court reset the sentencing hearing twice to ensure that Salinas had time to fully prepare.  At the sentencing hearing, Salinas successfully argued for a below-Guidelines sentence on the conspiracy conviction, although the court did not grant the full variance that Salinas requested.

Garcia-Pupo's allegations do not show either that he was abandoned by counsel or that he was prejudiced by the replacement of appointed counsel.  Without showing either deficient performance or prejudice, Garcia-Pupo is not entitled to relief on this claim.  The Government's motion for summary judgment is granted on this claim, and Garcia-Pupo's claim for relief on this basis is denied.

### 6.     The Claim of Failing to Present Mitigation Evidence (Ground 4)

In his final claim, Garcia-Pupo alleges that Salinas provided ineffective assistance at the sentencing hearing by failing to present favorable evidence of Garcia-Pupo's "personal, social, familial and economic profile" so that the court could take that evidence into consideration when imposing sentence.  (Docket Entry No. 113, pp. 8, 13-14).  He also contends that had Salinas properly advocated for him, the court would have imposed a "medium to minimum sentence."  (*Id.* at 17).  The Government responds that Garcia-Pupo's claim is refuted by the record of the sentencing proceedings.  (Docket Entry No. 121, pp. 31-33).

As to Garcia-Pupo's assertion that Salinas failed to investigate and present favorable evidence at the sentencing hearing, Garcia-Pupo's allegations are legally insufficient.  "[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]."  *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).  In his motion, Garcia-Pupo

does not identify any mitigating evidence that Salinas would have uncovered with further investigation.  Nor does he allege any facts that could show any evidence that would have contributed to him receiving a lesser sentence.  His allegations are legally insufficient to entitle him to either a hearing or relief on this claim.

And as to Garcia-Pupo's assertion that Salinas failed to properly advocate for him at the hearing, his allegations are both legally insufficient and refuted by the record.  Garcia-Pupo does not identify what information he believes Salinas failed to tell the court, nor does he explain why that information would have caused the court to impose a lesser sentence.  In addition, the record shows that the court was well aware of Garcia-Pupo's background.  The PSR contains extensive information about Garcia-Pupo's family, his personal life, and his economic circumstances.  (Docket Entry No. 62, pp. 9-14).  Further, at the sentencing hearing, Salinas argued as follows:

> MR. SALINAS:  Yes, Your Honor.  Mr. Garcia-Pupo is a 32-year-old male from Cuba.  He's got five minor children, ages 13 to 1 year old.  Two of the children actually live in Cuba, three live here in Houston.  He's married to a resident alien.  He's got –
>
> THE COURT:  Are his children United States citizens, the three?
>
> MR. SALINAS:  The three children in Houston are United States citizens.  He's got seven years of schooling in Cuba, mechanic by trade.  He's got in the United States, his mother, and she is here present in the courtroom; his wife and three children.  He works as a mechanic by trade; however, he was supporting his wife and the five children.  There was a defendant -- co-defendant in this case, Lazaro Martinez, related by Mr. Garcia-Pupo's father.  Mr. Garcia-Pupo has no criminal history.  He will live in the Houston area after he's sentenced if he doesn't get deported, and he has been in the United States since 2013.
>
> As I've stated, there were no legal objections to the PSR; however, I would just like to bring to the Court's attention that there was a guideline loss of $811,500, which wound up giving Mr. Garcia-Pupo a 16-point enhancement.  The ascertainable loss was only $15,000.
>
> THE COURT:  The potential intended loss was significantly more though.  Would you not agree?

> MR. SALINAS:  Yes, Your Honor.  And also over 250 account numbers with 25 or more victims, which wound up giving him a six-point enhancement; evidence that he possessed device-making equipment was an additional two points; and then he got a role adjustment which was two.  So in total he basically got a 26-level enhancement.  The two co-defendants, the cousin, Lazaro Martinez, received a 33-month sentence.  He pled guilty to Count 3.  The other co-defendant, Julio Blanco-Diaz, received 12 months and a day.

(Docket Entry No. 118, pp. 6-7).  Salinas argued for a downward variance in the sentence based on Garcia-Pupo's criminal history score and the sentences imposed on his codefendants.  (*Id.* at 8-9).  Salinas also requested that the court order any prison time to be served in the Houston area so that Garcia-Pupo's family could visit him.  (*Id.*).

The record shows that the court was well aware of Garcia-Pupo's "personal, social, familial and economic profile" when it imposed sentence.  That information was contained in the PSR and argued by Salinas at the sentencing hearing.  The record shows that Garcia-Pupo received a sentence greater than that of his codefendants not because the court was unaware of his background, but because he was "the actual leader of this quite large, quite organized, very well-run skimming ring that operated for quite some time in Harris County and other counties."  (*Id.* at 11).  Garcia-Pupo does not allege any facts that could show that his sentence was disproportionate to that of his codefendants when considered in light of their respective roles in the offenses, and he does not identify any facts that should have been presented to the court and that would have made a difference in the sentence imposed.

Garcia-Pupo's allegations of a failure to investigate his background are legally insufficient. His conclusory and unsupported allegations are also conclusively refuted by the record of the proceedings in this case.  The Government's motion for summary judgment is granted as to this claim, and Garcia-Pupo's claim for relief on this basis is denied.

## IV.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (cleaned up).  Under that controlling standard, the petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up).  A district court may deny a certificate of appealability on its own, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).  The court concludes that reasonable jurists could not find any of Garcia-Pupo's claims meritorious, so a certificate of appealability will be denied.

## V.       Conclusion

The Government's motion for summary judgment, (Docket Entry No. 121), is granted.  Garcia-Pupo's motion to vacate under § 2255, (Docket Entry No. 106), motion to correct sentence, (Docket Entry No. 110), and amended motion to vacate under § 2255, (Docket Entry No. 113), are denied.  Garcia-Pupo's civil action, (No. 4:23-cv-1790), is dismissed with prejudice.  The record conclusively demonstrates that no relief is appropriate, and no evidentiary hearing is needed.  *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (no hearing is necessary when a motion is devoid of factual or legal merit).  Because reasonable jurists could not disagree with the denial

of the § 2255 motion, no certificate of appealability is issued.  *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on February 22, 2024, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge